**Michelle L. HENNICK, Plaintiff,**

v.

**SCHWANS SALES ENTERPRISES, INC., Defendant.**

**No. C 00–3024–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Oct. 3, 2001.

Pamela J. Walker, Sherinian & Walker Law Firm, Des Moines, Iowa, for plaintiff.

Bruce L. Cook, O'Hagan, Smith & Amundsen, L.L.C., Chicago, IL, for defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................... 941

II. LEGAL ANALYSIS ........................................................ 943
 A. Standards For Summary Judgment ................................. 943
 1. Requirements of Rule 56 ..................................... 943
 2. The parties' burdens ........................................ 943
 3. Summary judgment in employment discrimination cases ......... 944
 B. Hennick's Pay Discrimination Claim ............................. 945
 1. The prima facie case ........................................ 946
 a. "Equal work" ............................................ 946
 b. Unequal pay and the scope of comparison ................. 947
 i. The Sowell rule ..................................... 947
 ii. The Hutchins rule .................................. 947
 iii. The appropriate rule ............................... 949
 2. Hennick's prima facie case .................................. 950
 C. Discriminatory Failure To Hire, Train, Or Promote .............. 951
 1. Absence of an actionable detriment .......................... 952
 2. Business judgment ........................................... 955
 D. Constructive Discharge ......................................... 957

III. CONCLUSION ........................................................... 958

In this action, plaintiff Michelle Hennick asserts claims against her former employer, defendant Schwans Sales Enterprises, Inc., for sex discrimination in violation of the Equal Pay Act (EPA), 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216. This matter comes before the court pursuant to the defendant's July 23, 2001, motion for summary judgment on all of Hennick's claims. Schwans contends, in essence, that Hennick is merely complaining about her job assignment, which was within Schwans's business judgment, in the absence of any evidence generating an inference of sex discrimination.

## I. INTRODUCTION

Although the court will not attempt an exhaustive discussion of the undisputed and disputed facts presented by the record in this case, some discussion of the factual background is required to put in context Hennick's claims and the parties' arguments for and against summary judgment. Those facts include a synopsis of the nature of Schwans's business, Hennick's employment with Schwans, and the circumstances under which Hennick left that employment.

Schwans sells frozen food directly to customers in their homes through a system of depots and route managers (RMs), who deliver products, collect payment, and solicit further orders. Thus, at the times pertinent to this lawsuit, RMs primarily serviced existing customers on established routes. However, in mid–1998, in an effort to build customers in its Western Iowa District, Schwans inaugurated the position of new account specialist (NAS), which was new to that district, but not new to the company. Unlike RMs, NASs did not service an existing route, but instead devoted their time to soliciting new customers and providing them with information about Schwans's products and services. Thus, NASs attempted to build customers for new routes, which would eventually be serviced by RMs. Schwans contends that NAS and RM positions occupied the same level in the company hierarchy. However, RMs were paid straight commission for sales to existing customers, while NASs were paid a daily guarantee, plus new customer bonuses and commissions on their occasional sales to new customers. Both RMs and NASs would initially undergo the same on-the-job training (OJT), to become familiar with Schwans's services and products, although their "field" training differed, because RMs were trained to manage an assigned route of existing customers, while NASs were trained to solicit new customers. New hires were therefore designated either OJT/NAS or OJT/RM. During OJT, both OJT/NASs and OJT/RMs were paid a daily guarantee, because neither had the ability to earn significant commissions during that phase of their employment. Although Hennick contends that NAS and RM positions were substantially equivalent in qualifications and duties, particularly during OJT, Schwans contends that the two positions were not substantially equivalent, except in terms of hierarchy in the company, because they required different skills and job duties.

Hennick began working for Schwans on September 7, 1998. Although she contends that she applied for a position with Schwans in response to an advertisement for RMs, Schwans's District Manager Joe McLimans concluded that Hennick would be better suited to a position as a NAS. Schwans contends that Hennick was hired to become a NAS, but Hennick contends that she accepted what she thought would be a temporary position as an OJT/NAS, until a RM position opened. Hennick was initially paid a daily guarantee of $100 as an OJT/NAS. Of the six other persons in

OJT at the same time as Hennick, all male, and all designated OJT/RMs, two, Helmer and Leeper, were paid the same daily guarantee as Hennick, while four were paid more: Hanna ($110), Niemier ($110), Dolocheck ($120), and Diemer ($140).

Hennick's job performance during OJT apparently was satisfactory. However, she contends that her field training, including "ride-alongs" with RMs, was delayed, because McLimans told her it was more important for "the guys" to get their RM field training. Hennick frequently expressed her frustration at not being assigned to routes as a RM as such routes became available, but McLimans told her that she needed to do the NAS job for which she had been hired. Although Schwans contends that McLimans told Hennick that it was not out of the question that she would eventually be assigned to a position as a RM, Schwans also contends that McLimans's and others' observations of Hennick's performance during OJT confirmed McLimans's original evaluation that Hennick did not have the personality characteristics that would make her a successful RM. Hennick contends that she was never told that she lacked any qualifications, with regard to her personality or otherwise, that would bar her from becoming a RM. Indeed, she contends that she performed the same tasks as RMs a significant portion of the time while working as a NAS, such that qualification for the NAS position indicates her qualification for the RM position, and that she in fact substituted for RMs on numerous occasions without complaints about her performance. Contrary to Schwans's contention, Hennick asserts that McLimans eventually told her that she would never be a RM in his or any other district.

Matters came to a head in November of 1998, some two and a half months after Hennick started her employment with Schwans. Hennick had an extensive con-versation with McLimans during which she again voiced her concerns that she was not being allowed to receive training for or to take a position as a RM, that she was being paid less than comparably situated males, and that her hours were too long. Although McLimans responded by increasing Hennick's daily guarantee to $120 and informing her that she could take off every other Friday, because he contends that he feared losing a successful NAS, Hennick contends that McLimans told her she would never be a RM. Hennick contends that, because her goal in applying for and accepting a job with Schwans was to become a RM, when McLimans foreclosed that opportunity, her whole reason for "employment with Schwans was nil." Hennick left her employment on November 17, 1998, and did not return calls from Schwans concerning her intentions to return to work. Hennick eventually found other employment with the Iowa National Guard.

In her Complaint, filed April 12, 2000, Hennick contends that the determining factor in Schwans's failure to hire or train her for, or to promote her to, a RM position, and for the differential in pay to which she was subjected, was her sex, in violation of state and federal law. She contends, further, that Schwans's conduct made her working conditions so intolerable that she was constructively discharged. Schwans disputes Hennick's claims and on July 23, 2001, moved for summary judgment in its favor on all of them.

The court heard oral arguments on Schwans's motion for summary judgment on September 14, 2001. At the oral arguments, plaintiff Hennick was represented by Pamela J. Walker of the Sherinian & Walker Law Firm in West Des Moines, Iowa, and defendant Schwans was represented by Bruce L. Cook of O'Hagan, Smith & Amundsen, L.L.C., in Chicago,

Illinois. This matter is now fully submitted.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact* *and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston,* 133 F.3d at 1107; *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party

944

opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach*, 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### 3. Summary judgment in employment discrimination cases

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post-Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

However, not long ago, the Eighth Circuit Court of Appeals also observed that,

"[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[1] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with

sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097 (emphasis added).

The court will apply these standards to Schwans's motion for summary judgment, taking each of Hennick's claims in turn.

### · *B. Hennick's Pay Discrimination Claim*

 It is not altogether clear whether Hennick asserts her pay discrimination claim under the Equal Pay Act, Title VII, or both. However, a successful gender-based wage discrimination claim under either statute "requires the plaintiff to prove that her employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 683 (8th Cir.2001) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), for the standard under the Equal Pay Act, and citing *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 669 (8th Cir.1992), as holding that the same standard applies to Equal Pay Act and Title VII wage-discrimination claims); *Simmons v. New Public Sch. Dist. No. Eight*, 251 F.3d 1210, 1215 (8th Cir.2001) ("[W]hen a plaintiff alleges that her employer provides 'unequal pay for equal work on the basis of sex, the standards are the same whether the plaintiff proceeds under Title VII or the Equal Pay Act.' ") (quoting *Kindred v. Northome/Industrial Sch. Dist. No. 363*, 154 F.3d 801, 803 (8th

---

1. In *Reeves*, the Supreme Court was considering a motion for judgment as a matter of law *after* a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the

inquiry under each is the same.' " *Id.* at 150, 120 S.Ct. at 2110 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

Cir.1998), *cert. denied,* 525 U.S. 1109, 119 S.Ct. 881, 142 L.Ed.2d 781 (1999)). "Once the plaintiff has proven her prima facie case, the employer then bears the burden of coming forward with a legitimate non-discriminatory factor upon which it based the wages paid." *Id.* (citing 29 U.S.C. § 206(d)(1)· (1994), and *Hutchins v. Int'l Broth. of Teamsters,* 177 F.3d 1076, 1080–81 (8th Cir.1999)); *but see Hutchins,* 177 F.3d at 1080–81 (stating that, under the EPA, the defendant bears the burden *"to prove* that the disparities complained of were based on ... a factor other than sex") (emphasis added) (citing 29 U.S.C. § 206(d)(1), and *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 513 (8th Cir.1995)).

### 1. The prima facie case

In *Sowell,* the Eighth Circuit Court of Appeals affirmed summary judgment in the employer's favor on a gender-based wage discrimination claim on the ground that the plaintiff could not make out a *prima facie* case:

> Sowell's claim for lead pay fails because she has not established that Alumina paid any other employee differently for performing a job of "equal skill, effort and responsibility" to her own. The record lacks specific evidence regarding the similarities between Sowell's work and that of other employees in lead positions at Alumina. She puts forward nothing more than conclusory allegations on this point, which are not sufficient to create a genuine issue of fact to survive summary judgment. *Cf. Tonelli v. United States,* 60 F.3d 492, 496 (8th Cir.1995).
>
> Finally, Sowell's wage discrimination claim regarding the discrepancy between her pay and that of her tool-room coworkers also fails. *The evidence establishes that throughout her employment in the tool room she was paid the same as, or more than, at least some*

*male tool makers in the tool room.* Such was the case even after Alumina hired two new employees who were paid more than all the other tool room employees. In any event, Alumina asserts in its defense that it had to pay higher wages to these newly hired tool makers because of job market demands. *Thus, Sowell has not produced evidence sufficient to satisfy the elements of a prima facie Title VII case of gender-based wage discrimination. We affirm the grant of summary judgment on this claim.*

*Sowell,* 251 F.3d at 683–84 (emphasis added).

Schwans likens the circumstances here to those presented in *Sowell,* because, Schwans contends, Hennick has made only conclusory allegations that the OJT/RM and OJT/NAS positions involved "equal skill, effort and responsibility." However, the fatal flaw in Hennick's wage discrimination claim, Schwans argues, is that the uncontroverted evidence demonstrates that Hennick was initially paid the same as two of her six male comparators, and after her raise to $120 per day, only one male, whom Hennick concedes was better qualified, was paid more. Thus, Schwans contends that there is no genuine dispute that Hennick was paid the same as, and ultimately more than, some males in the OJT program. Moreover, Schwans argues that it has justified any pay differential between Hennick and higher paid males on the basis of legitimate factors, including the pay those individuals were receiving in their prior jobs and their stable employment histories, where Hennick was unemployed for several months before she was hired by Schwans.

#### a. "Equal work"

The court finds that there are close questions here as to the equivalence

of Hennick's position and that of her comparators. Nevertheless, Hennick's evidence that her job and the jobs of her comparators were comparable is not as conclusory as Schwans suggests, because it includes evidence beyond her own assertions, including descriptions of the positions from other sources. Moreover, Hennick is correct that what is required for comparison is not identical jobs, but "substantially equal work." *See Broadus v. O.K. Indus., Inc.*, 226 F.3d 937, 941 (8th Cir.2000). As the Eighth Circuit Court of Appeals has explained,

> Jobs do not have to be identical to be considered "equal" under the EPA. "Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable."

*Krenik v. County of Le Sueur*, 47 F.3d 953, 960–61 (8th Cir.1995) (quoting 29 C.F.R. § 1620.14(a)). The court finds that there is a jury question on whether there were only "insubstantial or minor differences" between Hennick's position as an OJT/NAS and the OJT/RM positions of her male comparators, where initial training for the two positions was identical, and both jobs involved many of the same duties, albeit in different proportions, and those relative proportions are also disputed.

#### b. Unequal pay and the scope of comparison

*i. The Sowell rule.* However, Hennick's wage-based gender discrimination claim may still founder on the unequal pay element of her *prima facie* case. In *Sowell*, the Eighth Circuit Court of Appeals concluded that the plaintiff could not establish a *prima facie* case of gender-based wage discrimination, and consequently upheld summary judgment in favor of her employer, where "the evidence establishes that throughout her employment in the tool room *she was paid the same as, or more than, at least some male tool makers* in the tool room." *Sowell*, 251 F.3d at 684 (emphasis added). Similarly, in *Euerle–Wehle v. United Parcel Service*, 181 F.3d 898 (8th Cir.1999), the Eighth Circuit Court of Appeals affirmed summary judgment in favor of the employer on an Equal Pay Act claim where the court found that (1) the plaintiff had not shown that her work was equal to that of two male package center managers who were paid more than she was, where the male managers managed at least twice as many employees and two to three times as many packages; (2) the plaintiff was paid a higher salary than sixteen of the thirty-four male package center managers; and (3) her replacement was paid less than she was making when she was terminated. *Euerle–Wehle*, 181 F.3d at 901. Both *Sowell* and *Euerle–Wehle* therefore stand for the proposition that a plaintiff cannot prevail on a gender-based wage discrimination claim where she is paid the same as, or more than, "at least some male" comparators. This rule might be described as a "some males made the same or less" rule, under which a plaintiff *cannot* state a *prima facie* case of wage discrimination where "some males made the same or less" than the plaintiff for "equal work."

Here, the uncontroverted evidence is that, throughout her employment at Schwans, Hennick was paid the same as, or more than, "at least some male" OJT/RMs. "Thus," under *Sowell*, it appears that Hennick "has not produced evidence sufficient to satisfy the elements of a prima facie Title VII [or Equal Pay Act] case of gender-based wage discrimination," and this court should grant summary judgment in favor of Schwans on this claim. *Sowell*, 251 F.3d at 684; *Eurle–Wehle*, 181 F.3d at 901.

*ii. The Hutchins rule.* On the other hand, in *Hutchins v. International Broth-*

*erhood of Teamsters,* 177 F.3d 1076 (8th Cir.1999), another panel of the Eighth Circuit Court of Appeals apparently applied a different rule to determine the sufficiency of the plaintiff's *prima facie* case of wage discrimination under the EPA:

> The undisputed evidence revealed that the IBT hired male and female organizers at a starting salary of $35,000 and that it also hired male and female organizers at higher starting salaries. The district court focused on twelve male organizers whose starting salaries were higher than $35,000 and whom Hutchins had selected for comparison in support of her equal pay claim. The IBT conceded that Hutchins' job duties and responsibilities were the same as that of the twelve male comparators. The district court found that Hutchins had made out a prima facie case of pay discrimination with respect to the twelve comparators.
>
> A prima facie case of pay discrimination is established by proof that the employer paid "workers of one sex more than workers of the opposite sex for equal work." *Corning Glass Works v. Brennan,* 417 U.S. 188, 196, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). As discussed above, Hutchins' starting salary was the same as that of eight male organizers and there were five female organizers who were paid higher starting salaries. Although Hutchins identified twelve male organizers who received higher starting salaries, we have cautioned that comparisons with "specifically chosen employee[s] should be scrutinized closely to determine [their] usefulness." *Heymann v. Tetra Plastics Corp.,* 640 F.2d 115, 122 (8th Cir.1981). Hutchins offers no rationale for asking the court to focus only on the twelve male employees she selected and disregard the eight male organizers whose starting salaries were the same as hers.
>
> Nevertheless, we cannot say that the district court erred in finding that Hutchins established a prima facie case of pay discrimination.

*Hutchins,* 177 F.3d at 1081 (footnote omitted). Thus, *Hutchins* stands for the proposition that a plaintiff *can* state a *prima facie* case of gender-based wage discrimination where she shows that she was paid less than at least some male comparators for equal work, *even if* she was paid the same as other male comparators. In other words, the rule of *Hutchins* is that the plaintiff *can* make out a *prima facie* case, if she shows that "at least some males made more" for "equal work."

Similarly, some time ago, the Eleventh Circuit Court of Appeals held that, to make out a *prima facie* case of gender-based wage discrimination, "Plaintiff need only show discrimination in pay against an employee vis-a-vis one employee of the opposite sex." *EEOC v. White & Son Enters.,* 881 F.2d 1006, 1009 (11th Cir. 1989) (citing *Brock v. Georgia Southwestern College,* 765 F.2d 1026, 1033 n. 10 (11th Cir.1985)); *see also Merrill v. Cintas Corp.,* 941 F.Supp. 1040, 1044 n. 4 (D.Kan. 1996).[2] In *White & Son Enterprises,* the

---

**2.** In *Merrill,* the district court applied the rule in *White & Son Enterprises* as follows:

> In its papers, the defendant does argue that the plaintiff cannot state a prima facie case of gender discrimination under the EPA because Mr. Connors, who was hired as a salesperson at the same time as the plaintiff, was paid the same starting salary as the plaintiff. *However, the EPA, as a matter of law, does not require a plaintiff to show that she was paid less than every male employee. Rather, to state a prima facie case under the EPA, a plaintiff must show that there is "discrimination in pay against an employee vis-a-vis one employee of the opposite sex,"* EEOC v. White and Son Enterprises, 881 F.2d 1006, 1009 (11th Cir.1989), which the plaintiff has done with respect to herself and Mr. Brownell. The *White and Son Enterprises* decision does not prevent the de-

Eleventh Circuit Court of Appeals explained further, "If, however, other appropriate 'comparators,' *i.e.*, employees doing substantially equal work, were wrongly excluded from the comparison by plaintiff, defendant must call them to the attention of the court." *Id.* (again citing *Brock,* 765 F.2d at 1033 n. 10); *and compare Hutchins,* 177 F.3d at 1081 (holding the lack of any rationale for focusing only on better paid comparators did not defeat the plaintiff's *prima facie* case, but suggesting that evidence that some appropriate comparators received the same pay is relevant to the ultimate disposition of the claim). In other words, under the Eleventh Circuit's "one-on-one" rule, if a female plaintiff establishes a *prima facie* case on the basis of a one-on-one comparison with a better-paid male comparator, the burden shifts to the defendant employer to show that other male comparators, including those paid the same or less than the female plaintiff, should properly be considered.

■ *iii. The appropriate rule.* The approach of the Eighth Circuit Court of Appeals in *Hutchins* and the Eleventh Circuit Court of Appeals in *White & Son Enterprises* seems more consonant with the Supreme Court's articulation of the burden-shifting paradigm for analysis of discrimination in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), than does the approach in *Sowell.* Under *Reeves* and its predecessors, the purpose of the *prima facie* case is to " 'rais[e] an inference of discrimination,' " that is, it must be sufficient for courts to "presume these acts, if otherwise unexplained, are more likely than not based on the consideration

of impermissible factors." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). Such an inference, it seems to this court, arises where the plaintiff shows that *some* male comparator was paid more than the plaintiff was paid for "equal work." Under *Reeves,* the defendant must then articulate a legitimate, non-discriminatory reason for its conduct, and the plaintiff must overcome that reason by showing the proffered reason is a pretext for discrimination, thus leaving with the plaintiff at all times " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). To put it another way, what the plaintiff's evidence must show under *Reeves* to avoid summary judgment on a wage discrimination claim is "1, that the stated reasons were not the real reasons for [the wage differential]; and 2, that [sex] discrimination was the real reason for [the wage differential]." *Id.* at 153, 120 S.Ct. 2097. Evidence that other male comparators were paid the same or less than the female plaintiff for "equal work" is plainly relevant to the "ultimate determination" of whether the defendant engaged in intentional discrimination, and should properly be considered at that stage of the analysis.

Furthermore, the *Sowell* decision does not expressly overrule *Hutchins,* nor could one panel of the Eighth Circuit Court of

fendant from making use of this evidence concerning Mr. Connors at trial in order to seek to have the jury draw inferences of non-discrimination from it; rather, it merely precludes summary judgment based on such evidence.

*Merrill,* 941 F.Supp. at 1044 n. 4. This analysis is consonant with the analysis of discrimination presented in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), as explained more fully in the body of the present decision.

Appeals overrule another. *See, e.g., Hohn v. United States,* 262 F.3d 811, 817 (8th Cir.2001) (page references not yet available) ("A panel of this court ordinarily cannot overrule a prior panel opinion, but this rule does not apply when a decision of the Supreme Court casts doubt upon the prior panel opinion."). Indeed, although the decision in *Sowell* cites *Hutchins* as authority on other issues pertinent to a wage discrimination claim, *see Sowell,* 251 F.3d at 683 (citing *Hutchins* for the burden-shifting analysis of a gender-based wage discrimination claim), the *Sowell* decision does not mention or distinguish *Hutchins* with regard to the conclusion that the plaintiff in *Sowell* had failed to make out a *prima facie* case of wage discrimination under a "some males made the same or less" rule, even though that rule appears to be contrary to the holding in *Hutchins. See id.* at 683–84.

Moreover, the "some males made the same or less" rule stated in *Sowell* seems to this court to be contrary to the principle that the Equal Pay Act prohibits an employer from "discriminat[ing] between employees on the basis of sex by paying wages to employees … at a rate less than the rate at which he pays wages to employees of the opposite sex … for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *see also Sowell,* 251 F.3d at 683 (quoting similar language from *Corning Glass Works,* 417 U.S. at 195, 94 S.Ct. 2223). Taken literally—and the court finds nothing in *Sowell* suggesting that

application of the rule was based on the peculiar circumstances presented in that case—the "some males made the same or less" rule would force a court to hold that a female employee could not make out a *prima facie* case of wage discrimination where she was one of ten females paid half as much as nine males for "equal work," so long as a tenth male was paid the same or less than the female workers. In such circumstances, however, it seems at least highly likely that the employer is "discriminat[ing] between employees on the basis of sex," 29 U.S.C. § 206(d)(1), but the employer would nevertheless be insulated from suit by the rule stated in *Sowell.*

■ Because there is some inconsistency in panel decisions in this Circuit as to the rule for determining whether or not a plaintiff has made out a *prima facie* case of gender-based wage discrimination, the court will follow what it believes to be the rule that is better-reasoned and more consistent with Supreme Court precedent. For the reasons explained above, that rule is the *Hutchins* rule that, if "some males made more" for "equal work," the plaintiff has made out a *prima facie* case of wage discrimination, not the rule that the plaintiff cannot make out a *prima facie* case if "some males made the same or less," which was applied in *Sowell.*[3]

### 2. Hennick's prima facie case

In light of the court's conclusion that *Hutchins* states the more appropriate rule for determining whether or not a plaintiff has established a *prima facie* case of gender-based wage discrimination, the court

---

**3.** The court recognizes that, like the *Sowell* rule, the "some males made more" rule of *Hutchins* and *White & Son Enterprises* is not without its problems. Under the *Hutchins* rule, it would seem that a female plaintiff who is the second highest paid person in a particular position could make out a *prima facie* case of sex-based wage discrimination, even

though she made twice as much as nineteen male comparators for "equal work." However, in that circumstance, evidence of the less-well-paid male comparators would clearly be relevant on the "ultimate question" identified in *Reeves,* which is whether or not the differential in pay was the result of intentional discrimination.

finds that Hennick has made out, or has generated genuine issues of material fact as to, her *prima facie* case. Despite the fact that the uncontroverted evidence is that, throughout her employment at Schwans, Hennick was paid the same as, or more than, "at least some male" comparators, *see Sowell,* 251 F.3d at 684, Hennick has shown that some male comparators—Hanna ($110 daily guarantee), Niemier ($110 daily guarantee), and Dolocheck ($120 daily guarantee)—made more than she did. This suffices to generate a *prima facie* case of wage discrimination, even if two potential comparators—Helmer and Leeper—were paid the same as Hennick. *See Hutchins,* 177 F.3d at 1081 (the plaintiff made out a *prima facie* case of sex-based wage discrimination, where she presented evidence that twelve male comparators were paid more than she was, even though eight male comparators were paid the same as the plaintiff). The appropriateness of these and other comparators and the legitimacy of any pay differential on the basis of factors other than sex properly belong to later stages of the analysis. *See id.* (finding that, notwithstanding the plaintiff's adequate *prima facie* case, the defendant proved its defense that the differences were legitimately based on factors other than sex); *see also White & Son Enters.,* 881 F.2d at 1009 (finding that the defendant could properly draw the court's attention to comparators paid the same or less than the plaintiff in further analysis of the plaintiff's claim). The court finds that there are also genuine issues of material fact on other issues that properly belong to the later stages of the analysis of Hennick's claim. *See Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (what the plaintiff's evidence must show under *Reeves* to avoid summary judgment on a wage discrimination claim is "1, that the stated reasons were not the real reasons for [the wage differential]; and 2, that [sex] discrimination was the real reason

for [the wage differential]"). For example, there is sufficient evidence of equivalence of qualifications to present a jury question on whether Schwans's reasons for any pay differential were pretextual, and there is sufficient evidence that McLimans, in particular, harbored an anti-female animus to raise an inference that the real reason for the wage differential was Hennick's sex. Therefore, Schwans is not entitled to summary judgment on Hennick's sex-based wage discrimination claim under either the EPA or Title VII.

### C. Discriminatory Failure To Hire, Train, Or Promote

It appears that Hennick asserts claims of discriminatory failure to hire, train, or promote pursuant to both Title VII and the ICRA, and that such claims are based on the failure of Schwans to make her a RM. However, Schwans also seeks summary judgment on these claims, because Schwans contends, generally, that these claims are founded merely on Hennick's preference for one position, the RM position, over another, the NAS position, but that Schwans's decision not to place Hennick in a RM position constituted an exercise of business judgment, not discrimination. More specifically, Schwans contends that Hennick's failure-to-hire claim fails, because she was not qualified for the RM position she wanted, even if she met the technical requirements, because she lacked the necessary behavioral qualities to be a successful RM. Even if Schwans incorrectly evaluated Hennick's behavioral qualities, Schwans contends that Hennick cannot show that the decision not to hire her as a RM was anything but an exercise of business judgment in circumstances producing no inference of sex discrimination. Schwans contends that Hennick's failure-to-promote claim fails for the same reasons and for the additional reason that the RM position was not a "promotion" from

Hennick's position as a NAS, because both jobs were on the same level in the organizational hierarchy of the company. As to Hennick's failure-to-train claim, Schwans contends that there is no evidence of an "adverse employment action," because Hennick was adequately trained to be a NAS and she suffered no material detriment in the terms and conditions of her employment as a result of being trained to be a NAS rather than a RM, particularly where she was actually given a raise and more advantageous hours shortly before leaving her employment.

In light of the parties' arguments, the court finds that whether or not summary judgment should be granted on Hennick's failure-to-hire, —train, or —promote claims depends upon whether Hennick can generate genuine issues of material fact on two issues: (1) whether failure to train her for or place her in a RM position was the sort of "detriment" Title VII was intended to prohibit an employer from imposing for a discriminatory reason, and (2) whether Schwans's decision not to train Hennick for or place her in the RM position was simply an exercise of business judgment in the absence of evidence giving rise to an inference of discrimination. The court will consider these issues in turn.

### 1. Absence of an actionable detriment

■ Each of these claims requires Hennick to establish a *prima facie* case consisting of the following four elements: (1) she is a member of a protected class; (2) she applied for and was qualified for an open position; (3) she was rejected; and (4) after she was rejected, Schwans continued to seek, hire, train, or promote male applicants to fill the position. *See, e.g., Dotson v. Delta Consol. Indus., Inc.,* 251 F.3d 780, 781 (8th Cir.2001) ("To establish a submissible failure-to-promote case under Title VII, [the plaintiff] must first make a prima facie case, that is, he must

show that he is a member of a protected group, that he was qualified for and applied for a promotion for an available position, and that he was rejected for that position. He must also prove that a similarly situated employee, outside the protected group, was promoted instead."); *Caviness v. Nucor–Yamato Steel,* 105 F.3d 1216, 1223 (8th Cir.1997) ("To make out a prima facie case under Title VII for discriminatory failure to hire, the plaintiff must be able to prove '1) that she is a member of a protected class; 2) that she applied and was qualified for a job for which the employer was seeking applicants; 3) that she was rejected; and 4) that after rejecting plaintiff the employer continued to seek applicants with plaintiff's qualifications.' ") (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995)); *see also Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 354–55 (5th Cir.2001) ("A prima facie case of discrimination in a failure to promote or train case consists of four elements: (1) the employee is a member of the protected class; (2) he sought and was qualified for the position; (3) he was rejected for the position; (4) the employer continued to seek applicants with the plaintiff's qualifications."). However, Schwans contends that Hennick's failure-to-hire, —train, and —promote claims fail even *before* considering the elements of her *prima facie* case on each claim, because she has failed to demonstrate that failure to hire, train, or promote her to the RM position constituted an "adverse employment action," because the position constituted only a "lateral" move from her NAS position, not a move to a "better" position.

■ Title VII makes it unlawful "for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, condi-

tions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Although the bare language of this provision may suggest that *any* discrimination in the "terms" or "conditions" of employment may be actionable, the Eighth Circuit Court of Appeals has stated that, "[t]o bring a cause of action under Title VII, a plaintiff must allege that he [or she] has suffered *adverse* employment action." *See Enowmbitang v. Seagate Tech., Inc.,* 148 F.3d 970, 973 (8th Cir.1998) (emphasis added) (considering whether allegedly discriminatory failure to provide the plaintiff with a computer constituted "adverse employment action" as a threshold requirement to a Title VII claim).

The Eighth Circuit Court of Appeals explained this "adverse employment action" requirement in some detail in *Ledergerber v. Stangler,* 122 F.3d 1142 (8th Cir. 1997):

In order to overcome her initial burden of establishing a prima facie case of discrimination or retaliation, appellant was required to show, among other things, that she suffered an adverse employment action that affected the terms or conditions of her employment. *Harlston [v. McDonnell Douglas Corp.],* 37 F.3d [379,] 382 [(8th Cir.1994)]. The district court believed that appellant satisfied this burden by producing evidence that she suffered a loss of status and prestige with the reassignment of her staff. We conclude, however, that appellant failed to establish how such consequences effectuated a material change in the terms or conditions of her employment. While the action complained of may have had a tangential effect on her employment, it did not rise to the level of an ultimate employment decision intended to be actionable under Title VII. In *Harlston,* 37 F.3d at 382, we stated that "[c]hanges in duties or working conditions that cause no materially significant disadvantage ... are insufficient to establish the adverse conduct required to make a prima facie case." There, we held that a secretary's reassignment to a different position without any reduction in title, salary or benefits, even though the new position involved fewer secretarial duties and was more stressful, did not constitute an adverse employment action. We stated that "[t]his describes nothing 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)). *See also Flaherty v. Gas Research Inst.,* 31 F.3d 451, 457 (7th Cir.1994) (holding a semantic change in title and a "bruised ego" did not constitute adverse employment action where pay, benefits and level of responsibility remained the same); *Spring v. Sheboygan Area Sch. Dist.,* 865 F.2d 883, 886 (7th Cir.1989) (finding "public humiliation" is not sufficient to establish age discrimination because "public perceptions were not a term or condition of [the plaintiff's] employment").

The clear trend of authority is to hold that a "purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996) (emphasis in original). A transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action, "[o]therwise every trivial personnel action that an irritable ... employee did not like would form the basis of a discrimination suit." *Id.*

Appellant did not suffer the type of adverse employment action that is necessary to establish a prima facie case of

discrimination under Title VII. Appellant offers no evidence to show that an exchange of her staff, while her salary, benefits, responsibilities, title and even office location remained the same, somehow materially altered the terms or conditions of her employment. Further, the placement of the notice in appellant's file that discrimination is an unlawful employment practice did not constitute an adverse employment action. This notice, which fairly described the law, was given to the other employees at appellant's level and simply reiterated what was already part of DSS policy and performance appraisals, and was eventually deleted from the employees' files. Accordingly, we conclude that appellant has failed to establish a prima facie case of discrimination and we affirm the district court's grant of summary judgment in favor of appellees.

*Ledergerber,* 122 F.3d at 1144–45 (footnotes omitted).

 Ordinarily, "[a]dverse employment action is that which materially alters the terms or conditions of the plaintiff's employment." *Enowmbitang,* 148 F.3d at 973. Here, however, the question is whether Schwans's *failure* to make an alteration in Hennick's job assignment or to train her for a different position constituted an "adverse employment action." Logic suggests that, if making a "purely lateral transfer" cannot constitute "adverse employment action," *see Ledergerber,* 122 F.3d at 1144–45, then *failure to make* a "purely lateral transfer" also would not constitute "adverse employment action." Similarly, whether or not denial of a RM position or training for a RM position constituted the required "adverse employment action" should presumably be measured by the same considerations applied to whether or not making such a change against an employee's wishes constituted "adverse employment action." Therefore, in deciding whether or not Hennick's fail-

ure to obtain or to be trained for a RM position constituted adverse employment action, because it would have involved a "purely lateral transfer," the trier of fact should consider, among other things, whether the position the employee preferred involves a *promotion* "in form or substance," or "only minor changes" in working conditions, pay, or benefits, with the same goal that, " '[o]therwise every trivial personnel action that an irritable ... employee did not like would form the basis of a discrimination suit.' " *Id.* at 1144 (quoting *Williams,* 85 F.3d at 274). Also, in deciding whether or not a transfer was a "demotion," for purposes of a retaliation claim, the Eighth Circuit Court of Appeals has considered whether the change in position foreclosed opportunities for advance, such that an ostensibly "lateral" change constituted an "adverse employment action." *See, e.g., Davis v. City of Sioux City,* 115 F.3d 1365, 1369 (8th Cir.1997) (retaliation took the form of transfer to a less desirable position, because that position offered little opportunity for salary increases or advancement). This factor is also an appropriate consideration here.

The Fifth Circuit Court of Appeals recently held that, to be actionable under Title VII, the plaintiff must show that a failure to transfer him to a preferred position "tended to adversely affect [the plaintiff]," where his employer contended the preferred position was not a promotion. *See Oden v. Oktibbeha County, Miss.,* 246 F.3d at 458, 468 (5th Cir.2001) (employer contended that the plaintiff could not establish a *prima facie* case of race discrimination, because the chief sheriff's deputy position for which he applied was not a promotion). The court concluded that the plaintiff could make the necessary showing by demonstrating that the employer "made an ultimate employment decision." *Id.* The Fifth Circuit Court of Appeals found that denial of a transfer or perceived pro-

motion in that case was "an ultimate employment decision," because only one person could fill the desired position, which made that person second in command, and appointment of someone else consequently precluded the plaintiff from becoming second in command. *Id.* at 468–69. Thus, whether or not placing others in the position the plaintiff sought was an "ultimate employment decision," because it precluded the plaintiff from filling that position, is also relevant to determining whether denial of the change in position is actionable under Title VII.[4]

 It is apparent that in each of these cases, whether or not a transfer was a "promotion," "demotion," or "purely lateral transfer," however, depended not on the plaintiff's subjective perceptions, although subjective impression may have some relevance, but upon objective consideration of whether or not there were factors that would distinguish the positions in such a way as to permit a reasonable person to conclude that transfer from one position to another, or denial of such a transfer, constituted an "adverse employment action."

 Here, the court finds that Hennick has generated genuine issues of material fact that transfer to a RM position was not a "purely lateral transfer," but may have been a "promotion," or at least a transfer to an objectively more favorable position, in terms of possible pay, benefits, or opportunities for advancement, such that denial of such a transfer could constitute "adverse employment action" upon which her failure-to-hire, —train, or —promote claims could be founded. For example,

Hennick has generated genuine issues of material fact that there is a difference in pay structure between RM and NAS positions, which may permit a jury to conclude that the RM position held the potential for better pay. Furthermore, the very factors that Schwans harps upon as demonstrating that the two positions did not involve "equal work" for purposes of a wage discrimination claim could allow a jury to infer that the positions differ in more than minor ways, such that the RM position is objectively more favorable in terms of working conditions, pay, or benefits, and opportunities for advancement. Thus, Schwans is not entitled to summary judgment on Hennick's claims of discrimination in hiring, training, and promotions on the ground that only a "purely lateral transfer," not an "adverse employment action," was involved.

### 2. Business judgment

 Schwans's next key contention is that it is entitled to summary judgment on these claims, because Hennick cannot raise an inference of discrimination in what amounts to a proper exercise of Schwans's business judgment to make her, and keep her as, a NAS rather than a RM. Schwans is correct that " '[a] company's exercise of its business judgment is not a proper subject for judicial oversight.' " *Cooney v. Union Pac. R.R. Co.*, 258 F.3d 731, 736 (8th Cir.2001) (quoting *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 956 (8th Cir.2001), in turn quoting *Regel v. K–Mart Corp.*, 190 F.3d 876, 880 (8th Cir.1999)); *see also Cronquist v. City of Minneapolis*, 237 F.3d 920, 927–28 (8th Cir.2001) (quot-

---

4. Similarly, in a case alleging discrimination based on removal from an "officer in charge" position, the Eleventh Circuit Court of Appeals held that there was no "adverse employment action," because the "officer in charge" designation was "temporary" and "ephemeral," as the designation was a "stop-gap" designation, ensuring that certain duties were performed in the event the officer normally responsible for those duties was unavailable, it was usually given to the most senior road patrol officer on a given shift, and it did not involve any actual increase in pay, benefits, responsibilities, or prestige. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1243–45 (11th Cir.2001).

ing with approval the district court's statement that "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination") (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995)). Therefore, the court's (and jury's) "role is not to determine whether the [employer] exercised sound business judgment, but whether its actions suggest discriminatory motives." *Lowery v. Hazelwood Sch. Dist.*, 244 F.3d 654, 658 (8th Cir.2001) (ADA case citing *Lidge–Myrtil v. Deere & Co.*, 49 F.3d 1308, 1312 (8th Cir.1995), a Title VII case). In order to fulfill this requirement, the plaintiff's evidence of discrimination must be sufficient for a reasonable fact-finder to infer that she suffered adverse employment action because of her sex or other protected characteristic. *Id.; Cronquist*, 237 F.3d at 928 (agreeing with

the district court that the plaintiff had presented no evidence of bias or discrimination to defeat the employer's claim that conduct was the result of the exercise of business judgment).

■ Contrary to Schwans's contentions, Hennick has presented sufficient evidence to generate a genuine issue of material fact that denial of her placement in a RM position was not simply the result of the exercise of "business judgment," but instead occurred in circumstances giving rise to an inference that sex discrimination was the real reason for the denial. For example, the failure of Schwans to inform Hennick of the "personality" or "behavioral" characteristics that Schwans now contends disqualified her from the RM position provides the necessary inference of pretext, while the absence of any female RMs, evidence that McLimans was not inclined to hire women to be RMs, statements by McLimans providing circumstantial evidence that he harbored an anti-female animus,[5] and evidence that Hen-

---

5. The court does not believe that the comments Hennick attributes to McLimans constitute "direct evidence" of discrimination, as she contends. Rather, those comments do no more than provide circumstantial evidence of discriminatory animus, although they may do that quite strongly, if Hennick proves that the statements were indeed made. "Direct evidence is that which demonstrates a specific link between the challenged employment action and the alleged animus." *Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 835 (8th Cir.2000). More specifically,

Direct evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir.1993) (quotation omitted). Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse

employment action in question to support such an inference. For example, " 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself' " will not suffice. *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir.1991), quoting *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775, 104 L.Ed.2d 268.
*Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir.1999). The statements attributed to McLimans—to the effect that it was more important for "the guys" to get their RM field training, that Hennick would have to "do better" to suggest women qualified to be RMs, and that females made a better first impression at the door in seeking new customers—do not "directly reflect" a "discriminatory attitude," where contrary reasonable inferences are just as readily apparent. For example, the first comment may simply refer to persons training to be RMs as opposed to NASs, not necessarily to men rather than women; the second statement may refer to qualifications other than the sex of the persons Hennick proposed as RM candi-

nick's attempts to break a perceived gender barrier to become a RM were thwarted provide the necessary inferences that the real reason for the denial of a RM position was Hennick's sex. *See Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (what the plaintiff's evidence must show under *Reeves* to avoid summary judgment on a discrimination claim is "1, that the stated reasons were not the real reasons for [adverse employment action]; and 2, that [sex] discrimination was the real reason for [the employer's decision]"). Schwans is not entitled to summary judgment on Hennick's claims of discriminatory failure to hire, train, or promote her to be a RM.

## D. Constructive Discharge

Finally, Schwans contends that, even if there are genuine issues of material fact as to whether or not Hennick was subjected to sex discrimination, there is not sufficient evidence that she was constructively discharged. Schwans's contention in this regard relies on the undisputed fact that Hennick was offered a raise and shorter hours just before she quit, which hardly suggests that Schwans was intentionally making her workplace intolerable, and on the fact that the Eighth Circuit Court of Appeals has held that not being given a position the plaintiff desired does not make work conditions sufficiently intolerable to constitute a constructive discharge. For this latter proposition, Schwans cites *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490 (8th Cir.1996).

▮ In *Tidwell,* the Eighth Circuit Court of Appeals reiterated that " 'frustration and embarrassment at not being promoted do not make work conditions sufficiently intolerable to constitute constructive discharge,' " *Tidwell,* 93 F.3d at 495 (quoting *West v. Marion Merrell Dow,*

*Inc.,* 54 F.3d 493, 498 (8th Cir.1995)), and that "[d]issatisfaction with a work assignment is, as a matter of law, normally not so intolerable as to be a basis for constructive discharge." *Id.* at 496 (citing *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir. 1994)). In *Tidwell,* the plaintiff "lost a single promotion opportunity to an arguably better qualified candidate," which the court concluded was a circumstance in which "the overwhelming compulsion to quit that is necessary for constructive discharge is not created." *Id.* at 495. However, the court in *Tidwell* also recognized that, "[i]n situations more egregious than this, where a better qualified employee is repeatedly turned down for promotions in favor of inferior candidates, we can foresee that a negative and degrading atmosphere sufficient to constitute a constructive discharge might exist." *Id.* Here, Hennick asserts that she was repeatedly passed over for arguably "better" RM positions that came open, while males with arguably only similar or lesser qualifications were instead placed in those positions. Thus, Hennick has generated genuine issues of material fact as to whether denial of a RM positions in the circumstances provided the necessary "negative and degrading atmosphere" or "overwhelming compulsion to quit." Moreover, as explained above, Hennick has generated genuine issues of material fact that she was not simply "dissatisf[ied] with a work assignment," but actively precluded from assignment to an objectively "better" position for discriminatory reasons. *Compare id.* at 496. Under the circumstances, *Tidwell* does not require summary judgment in Schwans's favor; rather, the jury should determine whether Schwans intentionally made Hennick's working conditions so intolerable that it was reasonably

dates; and the third is a back-handed compliment, not necessarily reflecting an anti-female animus. The court agrees, however, that

these statements may reflect that McLimans's job placement decisions were strongly influenced by the sex of the employee or applicant.

foreseeable that she would quit. *See id.* at 494 ("To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit. The plaintiff can satisfy the intent requirement by demonstrating that he quit as a reasonably foreseeable consequence of the employer's discriminatory actions.") (internal citations omitted).

Therefore, Schwans is not entitled to summary judgment on Hennick's claim that she was constructively discharged from her employment.

## III. CONCLUSION

For the reasons stated more extensively above, this is not simply a case in which the plaintiff quit in a huff over not receiving the position she wanted, but a case in which there are genuine issues of material fact that the plaintiff was subjected to discriminatory pay differentials on the basis of gender, was denied placement in and training for an objectively "better" position because she was female, and was constructively discharged by her employer. As such, this is not one of "those rare instances where there is no dispute of fact and where there exists only one conclusion," and that conclusion would be in favor of the defendant employer on the plaintiff's discrimination claims. *Johnson,* 931 F.2d at 1244; *see also Webb,* 51 F.3d at 148 (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244).

Therefore, Schwans's motion for summary judgment is **denied** in its entirety.

**IT IS SO ORDERED.**