# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2949

_____

| | | |
|---|---|---|
| Debra Euerle-Wehle, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| United Parcel Service, Inc., a | * | District of Minnesota. |
| Minnesota corporation; Gerald | * | |
| Kennedy, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  May 12, 1999
Filed:  June 22, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Debra Euerle-Wehle appeals from orders of the District Court[1] granting summary judgment to United Parcel Service (UPS) and to Gerald Kennedy on Euerle-Wehle's various claims related to her employment with and termination by UPS.[2]  We affirm.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]Euerle-Wehle's counsel, in the briefs submitted to this Court, spells her name "Eurle."  Nevertheless, all other documents in this case, including Euerle-Wehle's own

Euerle-Wehle worked for UPS in Minnesota from 1975 until 1994. At the time of the incident that led to her termination, she was managing two package centers, the second of which, located in Owatonna, she took on in April 1994. In August of that year, based on information received from another employee, UPS began investigating whether Euerle-Wehle was involved in removing packages from the Faribault package center, the other center she managed. Apparently, the packages were missorts, that is, packages that belonged in another center. It was alleged that they were removed and concealed so that they would not be discovered during an in-house audit at Faribault, although both parties have noted that missorts would not adversely affect audit results as to the center manager. After interviewing a number of witnesses, including Euerle-Wehle, UPS determined that Euerle-Wehle had violated the company's package-handling policy (for her involvement in having the packages removed from the center) and the integrity policy (for lying to UPS employees investigating the incident and for pressuring others to lie). UPS terminated her employment.

In a case removed from state court to the District Court, Euerle-Wehle alleged that UPS and Gerald Kennedy, her supervisor, committed a wide variety of violations of state and federal law. In two orders, dated March 20, 1997, and June 29, 1998, the District Court granted summary judgment to UPS and dismissed all of the claims. On appeal, Euerle-Wehle has narrowed her focus from the scattershot approach taken in her complaint and raises issues related to four of her claims: employment discrimination based on gender, breach of contract and promissory estoppel, equal pay violations, and defamation. She does not appeal the dismissal of any of her claims against Kennedy. We review the District Court's decision to grant summary judgment de novo.

---

affidavit and the signature thereon, use the spelling "Euerle." Therefore, we assume that the spelling of Euerle-Wehle's name in the caption of the case and throughout this opinion are correct.

First, Euerle-Wehle argues that the District Court erred in concluding there were no genuine issues of material fact on her claim of sex discrimination. The familiar McDonnell Douglas burden-shifting analysis is applicable in this kind of discrimination case, where there is no direct evidence of discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). Euerle-Wehle established a prima facie case, and UPS countered with a legitimate, nondiscriminatory reason for its actions. In order to survive the motion for summary judgment, Euerle-Wehle was then required to show there are genuine issues of material fact on the question of whether UPS's reason was a pretext for intentional discrimination. The issues Euerle-Wehle raises go to whether she was responsible for the removal of the missorts or whether, as she claims, it was instead Kelly Samuels, a supervisor who reported to Euerle-Wehle, who mishandled the packages. But whether Euerle-Wehle or Samuels was responsible for the removal of the packages is not a material fact on which the District Court made forbidden credibility determinations, as Euerle-Wehle suggests. The *court* did not choose to believe Samuels over Euerle-Wehle. It was UPS that made the credibility determinations – and it did so reasonably and in good faith.

The uncontroverted facts show that UPS conducted a thorough investigation of the package incident, talking to anyone who might have information. The investigators chose to believe Samuels (like Euerle-Wehle, a female employee), and a number of other witnesses who supported Samuels's story that the package removal was Euerle-Wehle's idea, instead of believing Euerle-Wehle's version of events. Only then did UPS conclude that Euerle-Wehle violated the package-handling policy, lied about it, and encouraged others to lie about it, and that she therefore should be terminated. Euerle-Wehle has not shown that the reason given by UPS for her termination was false, much less that the decision was colored by gender bias. Whether UPS *correctly* concluded that Euerle-Wehle had committed serious violations of company policy that warranted her termination is not material, because UPS acted reasonably and in good faith in its investigation. There is no evidence that the reason UPS gave for Euerle-Wehle's termination was created to disguise an illegal discriminatory motive.

Euerle-Wehle contends that UPS's discriminatory animus may be inferred because she was disciplined more harshly than and paid less than some of the male package-center managers. She has not shown, however, that the male managers she claims received more favorable treatment were similarly situated. Simply put, Euerle-Wehle has not "provided evidence from which a reasonable factfinder could conclude that the employer intentionally discriminated against the employee for a prohibited reason." Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1334 (8th Cir. 1996). The District Court properly granted summary judgment to UPS on her gender discrimination claims.

Euerle-Wehle also asserts that she is entitled to a jury trial on her claim that UPS breached unilateral contracts made with her or, if there were no contracts in fact, that such contracts should be implied in law under the equitable doctrine of promissory estoppel. Euerle-Wehle alleges two "contracts": (1) she was promised she would receive the benefit of a three-step discipline process (verbal warning, written warning, suspension) or, because of her status as a manager, even greater protection in the disciplinary process; and (2) UPS orally promised her she would receive "more" or "adequate" help in the centers she managed. We conclude as a matter of law that these agreements are not legally binding contracts between UPS and Euerle-Wehle.

The three-step disciplinary process to which Euerle-Wehle refers was included in the collective bargaining agreement (CBA) that UPS had negotiated with its hourly workers. Euerle-Wehle was a manager and not a party to the CBA. Further, the flexible disciplinary procedure UPS uses with management employees does not necessarily entitle her to any greater protection than that afforded union employees. As for the alleged promise for "more" or "adequate" assistance, it is far too indefinite to be enforced as a contract.

The alternative promissory estoppel claims asserted under Minnesota law also fail as a matter of law. The District Court correctly concluded there was neither a clear

–4–

and definite promise nor reliance induced by UPS. Moreover, even if there were promises made and broken, there is no showing of injustice as a result of the court's failure to enforce such promises. There are no equitable grounds to imply a contract in law where none can be proved in fact. The District Court did not err in dismissing these claims.

For her third claim, Euerle-Wehle appeals the dismissal of her federal Equal Pay Act claims. In granting summary judgment to UPS, the District Court held that Euerle-Wehle failed as a matter of law to make a prima facie case. We agree. First, she had not shown that her work was equal to that of the male center managers who were paid more than she. At the two centers Euerle-Wehle supervised, she was responsible for approximately sixty-one employees and an average of 15,805 packages per day. The male managers in question had responsibility for at least twice as many employees and approximately 12,000 to 30,000 more packages per day. In addition, there is no record evidence upon which to make a case that Euerle-Wehle's pay was unequal. Euerle-Wehle was paid a higher salary than sixteen of the thirty-four male package-center managers, and her male replacement at UPS started at a salary of $375 per month less than she was making when she was terminated. UPS was entitled to summary judgment on the Equal Pay Act claim.

Finally, Euerle-Wehle appeals the dismissal of her defamation claim. This claim too fails as a matter of law. The various statements Euerle-Wehle identified as defamatory were not made by agents of UPS; were not false; were subject to a qualified privilege as statements made in connection with an impartial investigation or as statements made to other employees about the reason for Euerle-Wehle's termination, with no actual malice to defeat the privilege; and lacked the necessary publication. Summary judgment was properly granted on this claim.

The judgment of the District Court is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.