# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3312

_____

Ari Karl Stern,                                    *
                                                   *
            Appellant,                             *
                                                   *    Appeal from the United States
      v.                                           *    District Court for the Southern
                                                   *    District of Iowa.
University of Osteopathic                          *
Medicine and Health Sciences,                      *
                                                   *
            Appellee.                              *

_____

Submitted:  April 13, 2000

Filed:  August 11, 2000

_____

Before  RICHARD S. ARNOLD, ROSS, and MORRIS SHEPPARD ARNOLD,
      Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Prior to being admitted to the defendant university's medical school, Ari Karl Stern notified the school that he had dyslexia, which has been defined as the "inability to read, spell, and write words, despite the ability to see and recognize letters," Dorland's Illustrated Medical Dictionary 516 (28th ed. 1994). At some point, Mr. Stern requested that the medical school accommodate his dyslexia by allowing him to supplement his answers on any multiple-choice tests required, either with an essay or

with responses to oral questioning.  Mr. Stern asserts that he was entitled by law to those accommodations.

The medical school does not dispute that Mr. Stern made those requests but contends that the accommodations that it gave -- to have someone read multiple-choice tests to him on an audiotape, to provide a private room in which to take the tests, and to grant him additional time for the tests -- were sufficient under the law.  The medical school also denies that it ever gave assurances to Mr. Stern that the school would provide the precise accommodations that he had requested.  In any event, the medical school refused his specific requests.  Mr. Stern eventually failed too many multiple-choice tests to stay enrolled, and the medical school dismissed him.

Mr. Stern sued the defendant university for discriminating against him on account of his disability under the Rehabilitation Act of 1973, *see*  29 U.S.C. § 701-796*l*, and the Iowa Civil Rights Act of 1965, *see* Iowa Code Ann. § 216.1-216.20.  The district court[1] subsequently granted the university's motion for summary judgment, noting that although Mr. Stern contended that the medical school had discriminated against him on the basis of his dyslexia by refusing to provide him reasonable accommodations in testing, he had failed to show why the school's administration of multiple-choice tests by an oral tape did not fully accommodate his dyslexia.  The court further held that as a matter of law the medical school had reasonably accommodated Mr. Stern.

Mr. Stern appeals, arguing that he offered evidence from which a fact finder could conclude, first, that the medical school had denied him reasonable accommodations for his dyslexia in its testing procedures and, second, that the medical school had failed to engage in an interactive process with him to determine what

---

[1]The Honorable Charles R. Wolle, Chief United States District Judge for the Southern District of Iowa.

accommodations for his disability were reasonable.  We affirm the judgment of the district court.

## I.

Mr. Stern does not dispute that the outcome of his Rehabilitation Act claim controls the outcome of his state civil rights claim.  In addition, we note that, in general, cases interpreting the Americans with Disabilities Act  of 1990 (ADA), *see* 42 U.S.C. §§ 12101-12213, and those interpreting the Rehabilitation Act  " 'are applicable and interchangeable,' " *Gorman v. Bartch*, 152 F.3d  907, 912 (8th Cir. 1998), quoting *Allison v. Department of Corrections*, 94 F.3d 494, 497 (8th Cir. 1996).  We therefore consider only Mr. Stern's federal claim and consult various ADA cases for assistance when necessary in doing so.

The Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," *see* 29 U.S.C. § 794(a).  For the purposes of our case, reasonable accommodations are required when a disabled student would otherwise be denied meaningful access to a university.  *See Alexander v. Choate*, 469 U.S. 287, 301 (1985).  A university need not modify its programs in a manner that fundamentally alters their nature or constitutes an undue burden on it.  *See Southeastern Community College v. Davis*, 442 U.S. 397, 410, 412 (1979).  In order to be a reasonable accommodation, any modifications requested in a program must be related to the disability.  *See Amir v. St. Louis University*, 184 F.3d 1017, 1029 (8th Cir. 1999) (ADA claim).

Mr. Stern offered evidence that he requested a particular testing scheme, that the medical school denied his request, and that his requested format might have allowed him to continue in the medical school.  Assuming, without deciding, that this evidence was sufficient to make a facial showing that a reasonable accommodation was possible,

the medical school then had the burden of producing evidence to show why such an accommodation was not offered. *See Wood v. Omaha School District*, 985 F.2d 437, 439 (8th Cir. 1993).

In support of its summary judgment motion, the university filed without objection the affidavit of a clinical psychologist, who attested that he was familiar in his professional capacity with individuals with dyslexia and that he had reviewed Mr. Stern's evaluations. The psychologist opined that any difficulties in taking a multiple-choice test that such a person would encounter due to that disability would be removed if the examination was administered "in an oral form such as an audio tape," in a separate room and the person was given extra time. These were the exact accommodations offered by the medical school. In our view, therefore, the medical school came forward with an expert opinion that it had done all that was necessary to modify its testing procedures to accommodate Mr. Stern's dyslexia.

We believe that in response to the affidavit of the expert witness, Mr. Stern was obliged to present expert evidence that the testing scheme that he requested was actually related to his disability and, furthermore, provided a benefit not available from the accommodations that the medical school did offer to him, *cf. Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996) (ADA claim; employer may choose among effective accommodations). We conclude that expert opinion is necessary here because neither the average layperson nor this court can determine without expert assistance the nature of dyslexia and what measures would actually address Mr. Stern's needs. *Cf. Silvestri v. General Motors Corp.*, 210 F.3d 240, 244 (4th Cir. 2000); *see also* Fed. R. Evid. 702. Even experts disagree as to the correct definition of the term "dyslexia." *See Bartlett v. New York State Board of Law Examiners*, 970 F. Supp. 1094, 1106-15 (S.D. N.Y. 1997), *aff'd in pertinent part*, 156 F.3d 321 (2d Cir. 1998), *vacated on other grounds*, 119 S. Ct. 2388 (1999); *see also Town of Burlington v. Department of Education*, 736 F.2d 773, 793 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985) (definition of "dyslexia" is "in flux").

We believe that based on Mr. Stern's evidence a fact finder could only speculate with respect to whether allowing Mr. Stern to supplement his answers on multiple-choice tests actually compensates for his dyslexia, rather than simply making the test easier for him in the same way that such a measure presumably would assist other students. *See Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994), quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985) (to withstand summary judgment, evidence must support finding for plaintiff based on more than " 'mere speculation' "). Because the medical school's expert attested that the school's proffered accommodations fully addressed Mr. Stern's disability, and Mr. Stern failed to establish a nexus between his requested testing scheme and his dyslexia, we conclude that ultimately he failed to meet his burden of showing that the accommodations that he requested were actually related to his disability. *See Amir*, 184 F.3d at 1029.

## II.

Mr. Stern also argues that the medical school failed to engage in an interactive process with him to determine whether reasonable accommodations for his dyslexia could be found. In an employment discrimination case brought under the ADA, we held that once an employer is notified that an employee is disabled and has requested an accommodation, the employer should engage in an interactive process with the employee to try to find reasonable accommodations for the disability. *See Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 951-52 (8th Cir. 1999). Even if such an interactive process is required in an academic setting, *see Guckenberger v. Boston University*, 974 F. Supp. 106, 140-42 (D. Mass. 1997), we conclude that Mr. Stern nonetheless would have to establish that reasonable accommodations for his disability would render him qualified for the medical school program, *see* 29 U.S.C. § 794(a); *cf. Fjellestad*, 188 F.3d at 954. As we have said, Mr. Stern failed to do so because he did not show that the modifications upon which he relied in his response to the university's motion for summary judgment would have accommodated his disability.

### III.

Because Mr. Stern did not provide probative evidence that would permit a fact finder to rule in his favor without engaging in speculation, we conclude that the district court properly granted the university's motion for summary judgment. *See Moody*, 23 F.3d at 1412. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.