# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1192

_____

Craig Mershon,                                    *
                                                  *
            Appellant,                            *
                                                  *        Appeal from the United States
      v.                                          *        District Court for the
                                                  *        Eastern District of Missouri.
St. Louis University; St. Louis                   *
University Board of Trustees;                     *        [PUBLISHED]
Nancy Siwak, Trustee; Joseph                      *
Hasten, Trustee; Jo Curran, Trustee;             *
Richard Baron, Trustee; Lawrence                  *
Legrand, Trustee; Robin Smith,                    *
Trustee,                                          *
                                                  *
            Appellees.                            *

_____

Submitted: October 10, 2005
     Filed: April 5, 2006

_____

Before RILEY, HANSEN, and COLLOTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

Craig Mershon appeals the district court's[1] grant of summary judgment to St. Louis University and its trustees (collectively "the University") in this action alleging a failure to accommodate and retaliation in violation of Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12182 (2000), and Section 504 of the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 794 (2000). We affirm.

I.

The following is a summary of the undisputed facts. Mershon is wheelchair-bound and sight impaired due to complications of cerebral palsy. He took courses at St. Louis University from 1997 through the spring of 2001 in both graduate and undergraduate studies. Mershon first applied to the graduate school in 1997 to pursue a Master of Arts degree in the Department of English as a classified student. While the application process was pending and the University was awaiting the receipt of necessary application materials, the University permitted Mershon to enroll in classes as an unclassified graduate student and later upgraded his status, pursuant to Mershon's request, to that of a conditional admit.[2] The University allowed him to remain in conditional status for two terms instead of following the usual one-term limit. When Mershon sought to change his proposed field of study from English to American Studies, the graduate school granted this request, changed his field of study, and reclassified his status from a conditional admit to an unclassified graduate student

---

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

[2]A "classified" graduate student is one who has been admitted into the graduate school to pursue an advanced degree, an "unclassified" graduate student is not formally pursuing a degree but is typically completing prerequisites for subsequent degree pursuit or taking courses for educational enrichment, and a "conditional" student typically has a classified application in progress and has been formally admitted to permit the initiation of course work prior to full approval of classified status. (Appellees' App. at 25.)

with an incomplete application. To complete his graduate school application, he still needed to submit additional materials.

In early August 1998, the University granted Mershon's application to enroll in the College of Arts and Sciences as an undergraduate student on a probationary basis, due to his poor academic performance (he had a cumulative graduate grade point average of 1.417) (Appellees' App. at 21). This status rendered him ineligible to maintain his enrollment as an unclassified graduate student. Mershon stated that he received several requested accommodations from 1998 through 2000, including large print materials, a tape recorder, note takers, and extra time. (Appellant's App., Mershon's Depo. at 19-20.) The University changed his status from probationary to that of a classified student with an undeclared major to enable him to qualify for financial aid because he was not eligible for financial assistance from the state vocational rehabilitation agency when he was not taking graduate-level courses. After the fall 1998 term, his undergraduate GPA was 3.5. His cumulative GPA fell to 3.0 by the spring 1999 term, and by the end of the spring semester for the 1999-2000 academic year, Mershon's cumulative GPA had fallen to 2.423 as a probationary undergraduate student. (See Appellees' App. at 20.) Mershon asserts that the University stopped providing accommodations in 2000, resulting in his inability to complete course work for a number of courses.

In July 2000, Mershon requested reinstatement as an unclassified graduate student. This status would entitle him to certain benefits and financial support from the state rehabilitation agency. Dr. Mancini, the Chair of the Department of American Studies, refused to allow Mershon to enroll in a graduate-level American Studies course until he completed his graduate school application, eliminated several incomplete undergraduate grades, and was admitted to the graduate school. Mershon's graduate school application would not be complete until he had taken and submitted his Graduate Record Examination General Test score and submitted a combined autobiographical sketch/statement of career goals. Mershon protested this decision

by meeting with the University's Associate Provost, Dr. Ellen Harshman. Mershon explained his need to be an unclassified graduate student in order to obtain benefits and financial support from the state rehabilitation agency, but Dr. Harshman would not interfere with Dr. Mancini's academic judgment. Dr. Harshman stated in her affidavit that she had several meetings with Mershon regarding academic matters, library privileges, and accommodation concerns. Dr. Harshman stated that she had to instruct Mershon to limit his contact with her office staff because his behavior was aggressive and upsetting to her staff.

In October 2000, Mershon petitioned the graduate school to be classified as an unclassified graduate student in the American Studies Department. The University granted the petition, certified him as eligible to receive federal financial aid, and changed his status from a classified undergraduate student to an unclassified graduate student with an open and incomplete application file to become a graduate student in American Studies. As such, to register for a particular graduate course, Mershon was required to obtain prior permission of the department chair of any department offering a course he wished to take. During both the fall 2000 and spring 2001 terms, Mershon attempted 12 credit hours and earned 0 credit hours. In January 2001, the Chair of the History Department denied Mershon's request to register as an unclassified graduate student in a graduate-level history course because Mershon had not been formally admitted into that department's graduate program, his GPA was below the standard accepted by the department, and he lacked adequate undergraduate course preparation.

In May 2001, the University's Director of Financial Aid disqualified Mershon from receiving federal financial aid because he did not meet the academic progress requirements established by federal regulation – his cumulative GPA as an unclassified graduate student was 1.214 in the spring of 2001 (Appellees' App. at 22), and his cumulative GPA in undergraduate-level courses was 2.4 (id. at 20). Mershon registered for three courses in August 2001, but the University administratively

dropped his enrollment because he failed to make adequate payment of tuition, as required of all students.

In November 2001, Jan Chapin, an investigator for the Office for Civil Rights, United States Department of Education, reported to Officer David Wright of the United States Federal Protection Services (now part of the Department of Homeland Security) that Mershon had contacted her by telephone regarding a potential complaint of discrimination against the University. She represented to Officer Wright that during their phone conversation Mershon had twice stated, "[M]y professor makes me so mad that I want to put a bullet in his head." (Appellant's Add. at 9.) She reported that Mershon disclosed to her that the professor of whom he spoke was Dr. Matthew Mancini, who, as Chair of the Department of American Studies, had previously refused Mershon admission to a graduate level course.

Officer Wright contacted Jack Titone, the University's Director of Public Safety, and relayed the report made by Chapin. Director Titone, in turn, consulted the Associate Provost for Enrollment Management, Edwin Harris, informing him of the threats and requesting confirmation of whether Mershon was currently enrolled as a student or could be restricted from campus. Harris confirmed that Mershon was not enrolled and agreed that the University could prohibit him from entering its premises. Director Titone then issued a directive to University Department of Public Safety Officers informing them that Mershon should be prohibited from entering the campus because of the threats he had made against a professor. The same day, three officers stopped Mershon from entering the campus.

Mershon filed suit against the University and its trustees, asserting discrimination on the basis of his disability in the failure to accommodate him while he was a student and retaliation for expelling him from campus after he complained of the failure to accommodate. The district court granted the University's motion for summary judgment, concluding that Mershon had failed to present any evidence of

a retaliatory motive in his expulsion from campus or of a failure to accommodate. Mershon appeals.

## II.

"We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. In doing so we apply the same standard as the district court and may affirm on any grounds supported by the record." Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005) (citations omitted). Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While summary judgment must be used with caution in discrimination cases due to the fact-specific nature of each case, it nonetheless may be proper "when a plaintiff fails to establish a factual dispute on an essential element of [the] case." Simpson, 425 F.3d at 542 (internal quotations omitted).

In the absence of direct evidence of discrimination, we analyze discrimination and retaliation claims under the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and refined in Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). See Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999). We analyze claims of failure to accommodate under "a modified burden-shifting analysis," because a discriminatory intent is not at issue. Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004) (internal marks omitted).

## A. Retaliation

Mershon argues that the district court erred in finding that he failed to establish a prima facie case of retaliation. The ADA prohibits discrimination against any individual who has opposed an unlawful act of discrimination, made a charge of discrimination, or participated in any manner in an investigation or proceeding under the ADA.[3] 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation and survive summary judgment, a plaintiff must demonstrate "(1) that he engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity." Amir, 184 F.3d at 1025. If this prima facie showing is made, "the burden then shifts to the defendant to proffer a legitimate nondiscriminatory reason for the adverse action." Id. at 1025-26 (citing Hicks, 509 U.S. at 506-07). "The burden of production then shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination." Id. at 1026 (citing Hicks, 509 U.S. at 507-08).

Mershon established a prima facie case sufficient to shift the burden of production to the University. He demonstrated (1) that in November 2001 he called Jan Chapin of the Office for Civil Rights of the United States Department of Education to complain that he believed the University was not accommodating his disability, which is a statutorily protected activity; (2) that the University took an adverse action against him by banning him from the campus; and (3) that the adverse action, which occurred the very next day when he attempted to enter the campus, was causally related to his telephone call to Chapin. The burden then shifted to the University to proffer a legitimate nondiscriminatory explanation for the adverse action. The University presented evidence indicating that Mershon's complaint to

---

[3]We will refer only to the ADA, but the legal principles involved are equally applicable to claims under the Rehabilitation Act. See Perkins v. St. Louis County Water Co., 160 F.3d 446, 448 (8th Cir. 1998); see also Hoyt v. St. Mary's Rehab. Ctr., 711 F.2d 864, 867 (8th Cir. 1983) (noting that retaliation against persons who make complaints under the Rehabilitation Act is actionable).

Chapin was perceived as a threat to harm a professor and that campus security simply acted to protect the University faculty and students from threatened violence. The district court concluded that Mershon failed to present evidence sufficient to show that the University's decision to ban him from campus was a mere pretext for disability discrimination rather than a legitimate response to a perceived threat. After a thorough review of the record, we agree.

Mershon argues that he never threatened to harm Dr. Mancini when he spoke to Chapin, and thus, a question of fact existed and the district court impermissibly resolved a credibility determination. In the summary judgment context, we accept Mershon's statements of fact and do not resolve credibility disputes. See Yates v. Rexton, Inc., 267 F.3d 793, 800 (8th Cir. 2001) ("In determining whether a plaintiff has met its burden with respect to pretext in a summary judgment motion, a district court is prohibited from making a credibility judgment or a factual finding from conflicting evidence."). Whether Mershon actually made threats to harm Dr. Mancini was a fact in dispute, but this fact did not preclude summary judgment. Although Mershon denied having made the threats to harm Dr. Mancini, Mershon admitted that he made a phone call to Chapin complaining about Dr. Mancini's refusal to allow him to register and the University's alleged failure to accommodate him. Mershon did not dispute that Chapin sincerely perceived that he had made a threat against Dr. Mancini, nor did he dispute that Chapin communicated to others her perception that he had made a threat. (Appellees' Add. at 10-11.) Cf. Johnson v. AT&T Corp., 422 F.3d 756, 762 (8th Cir. 2005) ("[T]he proper inquiry *is not* whether AT&T was factually correct in determining that Johnson had made the bomb threats. Rather, the proper inquiry is whether AT&T honestly believed that Johnson had made the bomb threats.") Thus, even assuming as true that Mershon never threatened to harm Dr. Mancini, there is no dispute that the University reasonably believed and acted upon Chapin's report and her perception that Mershon had made a threat against a faculty member. The district court did not make an impermissible credibility determination. See Euerle-Wehle v. United Parcel Serv., Inc., 181 F.3d 898, 900 (8th Cir. 1999)

(concluding that the defendant, not the district court, had made the credibility determinations and had done so "reasonably and in good faith").

Once the University set forth a legitimate nondiscriminatory reason for the adverse action of banning Mershon from campus, Mershon had the burden to establish "that he was the victim of intentional discrimination 'by showing that the [University's] proffered explanation is unworthy of credence.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 256). Mershon made no showing that the University's proffered explanation for the adverse action was false or that the University acted in bad faith in relying on Chapin's report. To the contrary, Mershon admitted that the University acted upon a perceived threat when it banned him from the campus. Even assuming, as Mershon asserts, that this underlying reason was false because he had in fact made no threat, Mershon presented no evidence from which to conclude that the University officials knew or even suspected as much. Cf. Johnson, 422 F.3d at 763 (stating that "even if AT&T was mistaken in its belief that Michael Johnson had made the threats, any such mistake does not automatically prove that AT&T was instead motivated by unlawful discrimination;" asserted reason must be a pretext for discrimination).

Mershon asserts that the short amount of time between his conversation with Chapin and the University's adverse action against him is suspicious and lends an inference of discrimination on account of his disability. Our review of the record convinces us that the timing of Mershon's expulsion from campus casts no doubt on the veracity of the University's explanation. The close proximity between his conversation with Chapin and the University's swift action instead supports its assertion that it acted quickly out of a legitimate concern for the safety of its faculty and students, and nothing in the record indicates that the University's explanation was a mere pretext for discrimination. See Euerle-Wehle, 181 F.3d at 900 (finding no pretext where there was no evidence that the reasons given were an attempt "to disguise an illegal discriminatory motive").

**B. Failure to Accommodate**

Mershon argues that the district court erred in granting summary judgment on his ADA and Rehabilitation Act claims that the University failed to provide him with reasonable accommodations for his disability. Title III of the ADA prohibits a private person who owns a place of public accommodation from discriminating against an individual "on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Discrimination under Title III specifically includes the failure to make reasonable modifications in policies, practices, or procedure to accommodate a disabled individual, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of the services. 42 U.S.C. § 12182(b)(2)(A)(ii).

Likewise, the Rehabilitation Act requires reasonable accommodations when an "otherwise qualified" disabled student, 29 U.S.C. § 794(a), "would otherwise be denied meaningful access to a university," Stern v. Univ. of Osteopathic Med. & Health Sciences, 220 F.3d 906, 908 (8th Cir. 2000). Title III of the ADA does not expressly articulate an "otherwise qualified" standard (in most circumstances, no qualifications are required to enjoy a public accommodation as secured by Title III). Basic qualifications come into play, however, when the context is that of post-secondary education. In this context, the "otherwise qualified" idea is implicit in Title III's acknowledgment, noted above, that requested modifications need not be provided if they will fundamentally alter the nature of the program. See 42 U.S.C. § 12182(b)(2)(A)(ii). It is beyond question that it would fundamentally alter the nature of a graduate program to require the admission of a disabled student who cannot, with reasonable accommodations, otherwise meet the academic standards of

the program.  An educational institution is not required by the Rehabilitation Act or the ADA to lower its academic standards for a professional degree.[4]

Thus, in the higher education context, a person alleging a failure to accommodate under Title III or the Rehabilitation Act must show (1) that the plaintiff is disabled and otherwise qualified academically, (2) that the defendant is a private entity that owns, leases or operates a place of public accommodation (for ADA purposes) and receives federal funding (for Rehabilitation Act purposes), and (3) "that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation," Amir, 184 F.3d at 1027.[5]  See 42 U.S.C. § 12182(b)(2)(A)(ii); 29 U.S.C. § 794(a).

---

[4]While there are minor differences between Title III of the ADA and the Rehabilitation Act, none of those differences are material in this case.  We will therefore consider cases dealing with each Act as "applicable and interchangeable." Stern, 220 F.3d at 908 (internal quotations omitted).  See Amir, 184 F.3d at 1029 n.5 (noting Rehabilitation Act claims are analyzed similar to ADA claims, except for the Rehabilitation Act's requirement that a person's disability serve as the sole impetus for an adverse action); Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) ("The ADA has no federal funding requirement, but it is otherwise similar in substance to the Rehabilitation Act, and cases interpreting either are applicable and interchangeable." (internal marks omitted)).

[5]The statement of elements for a Title III discrimination claim listed in Amir also includes the element of an adverse action based upon the plaintiff's disability. 184 F.3d at 1027.  We eliminate that stated element from our rendition of the standard in this case only because Mershon alleges a failure to accommodate as the sole act of discrimination here (apart from retaliation which is separately analyzed above). Because the alleged failure to accommodate is the adverse action and no other act is claimed as discriminatory, there is no requirement to demonstrate any adverse action other than the failure to accommodate itself.  See Peebles, 354 F.3d at 766 (noting that the failure to accommodate is a separate form of prohibited discrimination).

First, there is no real dispute here that Mershon is disabled within the meaning of the ADA and the Rehabilitation Act. Second, St. Louis University is a place of public accommodation within the meaning of the ADA and receives federal funding for purposes of the Rehabilitation Act. See Amir, 184 F.3d at 1028 (holding that "St. Louis University maintains both an undergraduate division as well as graduate programs in such areas as law, business, and medicine. Hence, it is a place of public accommodation under the ADA.").

As to the third requirement, Mershon bears the initial burden of demonstrating that he requested reasonable accommodations, see US Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002), and that those accommodations would render him otherwise qualified for admission to the professional degree program, see Falcone v. Univ. of Minn., 388 F.3d 656, 660 (8th Cir. 2004), cert. denied, 125 S. Ct. 2305 (2005). In his affidavit, Mershon vaguely asserts that he sent numerous letters and made phone calls to University officials between 1998 and 2001 requesting accommodations and that he was unable to complete course work due to the University's failure to provide them. Mershon admits, however, that the University provided several of his requested accommodations from 1998 through sometime in 2000, such as large print materials from one professor, a tape recorder, note takers, and extra time, and he stated that he had obtained his own software. He also asserts that the University stopped providing accommodations in 2000 and also asserts that he never received priority registration, computer software, tape recorded lectures, books on tape, and enlarged print documents and books.

We conclude that Mershon's assertions are much too general and conclusory to demonstrate that he requested reasonable specific accommodations that would have rendered him qualified for admission into the graduate school or that the University unreasonably failed to provide every requested accommodation. The district court found, "Plaintiff's academic record is replete with defendants' efforts to accommodate him in his academic endeavors until he became a perceived threat." (Appellant's Add.

-12-

at 17.) We agree with the district court that the record indicates the University offered Mershon many accommodations, such as many changes in his academic status and permission to remain in conditional academic status longer than school policy permitted, as well as the accommodations that he admitted receiving in some classes. Mershon's list of accommodations that he did not receive does not specifically identify which were sought and rejected for any particular course, nor does he explain how each requested accommodation was necessary to enable him to participate in light of his disabilities and the particular course requirements. His conclusory assertions that he made many phone calls and wrote many letters provide no basis for evaluating whether each request was adequately communicated to the University regarding a specific course or whether each was necessary to enable him to participate in a particular course in light of his disability. See Stern, 220 F.3d at 908 ("In order to be a reasonable accommodation, any modifications requested in a program must be related to the disability.")

Mershon complains that the University stopped providing accommodations sometime in 2000 and that this resulted in several incomplete grades in courses that he does not identify and for reasons not clearly articulated. Again, even accepting his conclusory allegations as true, Mershon's lack of specificity is an obstacle to determining whether he requested and was denied reasonable accommodations. "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." Bass v. SBC Communications, Inc., 418 F.3d 870, 872-73 (8th Cir. 2005).

The record also indicates that Mershon never completed his graduate school application, he lacked undergraduate course work preparation, and his overall academic performance was not up to the standard necessary for admission into the graduate school. "When the accommodation involves an academic decision, 'courts should show great respect for the faculty's professional judgment.'" Amir, 184 F.3d

at 1028 (quoting <u>Regents of Univ. of Mich. v. Ewing</u>, 474 U.S. 214, 225 (1985)). <u>See</u> <u>Falcone</u>, 388 F.3d at 659 ("'We will not invade a university's province concerning academic matters in the absence of compelling evidence that the academic policy is a pretext for [disability] discrimination.'") (quoting <u>Amir</u>, 184 F.3d at 1029, and alteration in original). Mershon has not demonstrated that he was otherwise qualified, with reasonable specific accommodations, to meet the prerequisites for admission into the graduate school program.

Mershon also asserts that the University failed to engage in an interactive process despite his "countless letters, phone calls, and personal visits" attempting to obtain accommodations. (Appellant's Br. at 21.) "Even if such an interactive process is required in an academic setting," <u>Stern</u>, 220 F.3d at 909, Mershon nevertheless would bear the initial burden of demonstrating that reasonable accommodations would render him qualified for admission into the graduate school. Mershon failed to do so.

## III.

Accordingly, we affirm the judgment of the district court.