# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2638

_____

Delphine Bray,                            *
                                          *
             Appellant,                   *
                                          *  Appeal from the United States
      v.                                  *  District Court for the District of
                                          *  Nebraska.
Douglas County, Nebraska; Robert          *
Houston, Director of Douglas County       *         [UNPUBLISHED]
Correctional Center,                      *
                                          *
             Appellees.                   *

_____

Submitted: December 14, 2006
Filed: January 31, 2007

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

PER CURIAM.

Delphine Bray appeals the district court's [1] adverse grant of summary judgment on her race and religious discrimination claims brought under 42 U.S.C. § 1983 (alleging a violation of the Equal Protection Clause) and her race and religious

_____

[1]The Honorable F.A. Gossett, III, United States Magistrate Judge for the District of Nebraska, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c).

discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII). The district court found Bray failed to establish a prima facie case of race or religious discrimination or retaliation and, in the alternative, the actions of the Douglas County Department of Corrections (DCC)[2] were based on legitimate, nondiscriminatory reasons. We affirm.

Bray is an African-American and a Christian. In 2003, she began working as a corrections officer with the DCC and was required to serve a six-month probationary period. She received satisfactory to excellent reviews for the first half of her probationary period, but the DCC terminated her on the last day of her probation. DCC Director Robert Houston stated Bray was terminated based on her "marginal" six-month performance evaluation which noted she expressed her personal religious beliefs to inmates. Houston also stated Bray had engaged in "prayer circles" with DCC inmates and "anointed" both herself and her desk prior to letting inmates out of their rooms in the presence of inmates. Houston considered Bray's personal involvement with inmates a potential security risk. Bray claims the DCC treated her differently than other officers who were similarly situated to her based on her race and religion and that she was fired in retaliation for reporting the alleged maltreatment of a pregnant African-American inmate by fellow officers prior to her termination.

Bray recognizes the court should analyze her discrimination claims using the three-pronged burden-shifting scheme first described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), which applies equally to Bray's discriminatory discharge claims brought under Title VII and 42 U.S.C. § 1983. See Richmond v. Bd.

---

[2]Since Robert Houston is sued only in his official capacity, the claims against him need not be addressed separately. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity. . . . A suit against a public employee in his or her official capacity is merely a suit against the public employer.")

of Regents, 957 F.2d 595, 598 (8th Cir. 1992).  As an initial matter, Bray did not proffer evidence showing any other officer was outside her protected religious class, therefore, the district court correctly concluded she had not established a prima facie case of religious discrimination and could not succeed on her claims as a matter of law.  See Mann v. Frank, 7 F.3d 1365, 1370 (8th Cir. 1993) (stating a plaintiff's religious discrimination claim requires proof of dissimilar treatment of similarly situated employees outside the protected class).

Moreover, while Bray does identify two white officers who, unlike Bray, were not terminated following their probationary periods, she has not shown they were similarly situated.  One of the officers left a facility key card at home and the other misplaced some facility keys.  Neither incident involved inappropriate conduct with inmates.  On the other hand, the DCC believed Bray had participated in "prayer circles" with inmates.[3]  Additionally, Bray does not dispute that the white officers received significantly more favorable ratings ("satisfactory" and "commendable") than she did ("marginal") on an identical comprehensive six-month performance evaluation.  The white officers also had different supervisors than Bray.  Given the above, the district court correctly concluded Bray could not succeed on her race discrimination claims as a matter of law.  See Rodgers v. U.S. Bank, 417 F.3d 845, 851 (8th Cir. 2005) (noting "similarly situated" employees "must have dealt with the

---

[3]Bray denies she ever participated in "prayer circles" with inmates and urges us to find her denial presents a genuine issue of material fact that should have precluded an adverse grant of summary judgment.  We disagree.  We addressed a similar argument in Euerle-Wehle v. United Parcel Service, Inc., 181 F.3d 898 (8th Cir. 1999).  As is the case here, in Euerle-Wehle it was the employer, not the district court, that made the credibility determination complained of by the plaintiff, and we held it was not material whether the employer's findings were correct because there was no evidence the reason given for terminating the plaintiff was a disguise for an illegal discriminatory motive.  Id. at 900.  We find there is no genuine issue of fact concerning whether the DCC  honestly believed Bray participated in prayer circles with inmates and that her participation was inconsistent with her professional duties.  See e.g., Scroggins v. Univ. of Minn., 221 F.3d 1042, 1045 (8th Cir. 2000).

-3-

same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances"); cf Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) ("Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim.").[4]

Finally, Bray's retaliation claim fails because Bray does not claim she suffered from retaliation after filing an employment discrimination charge on her own behalf, on behalf of a co-worker, or after testifying, assisting, or otherwise participating in a Title VII investigation, proceeding, or hearing. Instead, the retaliation alleged came after Bray reported her co-workers' treatment of an inmate. This report is not protected conduct under Title VII. See, e.g, Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1183 (8th Cir. 1998) (affirming the dismissal of a Title VII retaliation claim where a plaintiff teacher alleged his employer school retaliated against him for reporting a co-teacher's alleged discrimination of students); Evans v. Kan. City, Mo. Sch. Dist., 65 F.3d 98, 101 (8th Cir. 1995) (reversing a judgment for a plaintiff teacher's Title VII retaliation claims where retaliation alleged stemmed from teacher's opposition to employer school's desegregation plan and not with teacher's employment with school).

Accordingly, we affirm.

_____

---

[4]Bray's § 1983 race discrimination claim also fails because she has not pointed to any unconstitutional government policy as the motivating factor behind her termination. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994) (noting a municipality's liability for the acts of its employees attaches only upon a showing that a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's officers motivated the acts).