*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1207**

Preeti Kaur Rajpal,
Appellant,

vs.

Regents of the University of Minnesota, et al.,
Respondents.

**Filed April 25, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CV-13-18627

Richard T. Wylie, Minneapolis, Minnesota (for appellant)

William P. Donohue, General Counsel, Brian J. Slovut, Associate General Counsel,
University of Minnesota Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Reyes, Judge; and

Randall, Judge. [*]

## U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

University of Minnesota dismissed student Preeti Rajpal from its medical school

after Rajpal flunked two clinical courses. This was Rajpal's second dismissal. Rajpal sued

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

the university, alleging that it failed to accommodate her performance anxiety as required by the Federal Rehabilitation Act and the Minnesota Human Rights Act and that her dismissal violated her constitutional due process rights. The district court granted summary judgment to the university. Because Rajpal produced no evidence establishing that she was qualified to continue as a medical student even with her proposed accommodations, we affirm the district court's dismissal of her discrimination claim. And because the university removed Rajpal from the program using a procedure that meets any procedural and substantive constitutional requirements, we also affirm the district court's dismissal of her due process claim.

**FACTS**

Preeti Rajpal enrolled in the University of Minnesota Medical School in 2002. The school dismissed her in 2005 for poor academic performance. She maintained that a misdiagnosis of depression caused her academic difficulties. Rajpal and the university reached a settlement concerning the 2005 dismissal, affording her a path to readmit. The school readmitted Rajpal as a full-time medical student in 2007.

Rajpal's academic difficulties continued after her readmission. She failed step 1 of her United States Medical Licensing Examination (known as "boards") and the clinical clerkship component of the Medicine I rotation. Under school policy, the clinical failure required her to appear before the medical school's Committee on Student Scholastic Standing (COSSS) and request permission to retake the course. The committee granted her request to repeat the clerkship, and she passed it without any accommodation. Rajpal asked the school to extend her graduation date because of her academic difficulties. The school

2

granted the request, but it cautioned that it was "very concerned about [her] needing additional time to successfully complete [her] medical education." In May 2010 Rajpal failed another clinical clerkship, specifically, the OB-GYN clerkship. Because this was Rajpal's second clinical course failure, it triggered a mandatory dismissal hearing before the COSSS.

Soon afterward, Dr. Jennifer Beldon of Boynton Health Services diagnosed Rajpal with "performance anxiety." Dr. Beldon believed that Rajpal's performance anxiety could be accommodated if she was given extra time on written tests and was provided with a quiet examination space to take them. Consistent with Dr. Beldon's recommendation, the university's disability-services office provided Rajpal a letter recommending that she be allowed extended testing time and a quiet study space. But Dr. Beldon did not recommend any specific accommodation for clinical studies. Similarly, the disability-services office did not make any recommendation for those studies.

In July 2010 the COSSS held a hearing to determine whether Rajpal should be dismissed from medical school. Rajpal appeared and informed the committee that she had performance anxiety and was seeking professional treatment, but she did not identify any accommodations. She blamed her clinical failure on her lack of learning, which she in turn blamed on her not being given the opportunity to see many patients on her own. She asserted that these deficiencies at the clinical site prevented her from reinforcing her academic knowledge. The COSSS postponed deliberating until it could review a letter from Dr. Cheryl Hanson, the onsite director of Rajpal's OB-GYN clerkship. Dr. Hanson wrote that it would be reasonable to allow Rajpal to retake the clinical course at a more structured

3

setting in a different location. Before the committee deliberated, an additional failing grade for a pediatric gastroenterology clinical course was mistakenly entered on Rajpal's record; Rajpal had in fact passed that course. The errant failing notation was noted on the agenda of the August COSSS meeting.

The COSSS members voted to dismiss Rajpal. In its letter explaining the decision, the committee included an erroneous failing grade in second-year gastrointestinal pathophysiology. Rajpal appealed and asked the committee to reconsider its decision. Rajpal emphasized that she had performance anxiety as diagnosed by Dr. Beldon and requested that she be allowed to retake the OB-GYN course with her doctor's recommended accommodations. The COSSS convened for another hearing, after which it denied Rajpal's reconsideration request and voted to affirm its previous dismissal decision. This time, the committee acknowledged the error in including Rajpal's supposed gastrointestinal pathophysiology failure, and it informed Rajpal that her record had been corrected.

Rajpal complained about the COSSS determination, and, after a hearing, a three-member grievance panel determined that the COSSS did not violate any policy, procedure, or established practice by dismissing her. Dr. Aaron Friedman, the extant dean of the medical school, reviewed the decision and concurred with the panel's findings. Rajpal appealed to the provost, who upheld the dismissal decision after concluding that she received due process.

Rajpal sued the university and Dean Friedman, alleging, among other things, that the school dismissed her on the basis of her disability in violation of the Federal

4

Rehabilitation Act and the Minnesota Human Rights Act (MHRA). She also claimed that the dismissal violated her constitutional right to due process. The university moved for summary judgment, which the district court granted.

Rajpal appeals.

## DECISION

Rajpal argues that the district court erred by granting summary judgment on her disability-discrimination claim and by failing to recognize the viability of her claim that the university violated her procedural and substantive due process rights. We review summary judgment decisions de novo to determine whether the district court applied the law correctly and whether genuine issues of material fact prevent judgment as a matter of law. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). We rely on undisputed facts and construe any disputed evidence in the light most favorable to the nonmoving party. *See id.*

### I

We first address Rajpal's argument that the district court erred by granting summary judgment on her disability-discrimination claim. The Federal Rehabilitation Act prohibits educational institutions receiving federal financial assistance from denying otherwise qualified persons the benefits of their programs because of a disability. 29 U.S.C. § 794(a) (2012). The MHRA similarly makes it an unfair discriminatory practice to dismiss students based on their disabilities. Minn. Stat. § 363A.13, subd. 2 (2014). Because these statutes contain similar language and are directed toward a similar purpose, we will interpret and apply together the claims arising from the Rehabilitation Act and the MHRA. *See, e.g.*,

5

*State by Cooper v. Hennepin County*, 441 N.W.2d 106, 110 (Minn. 1989) (relying on interpretations of the Rehabilitation Act to construe the MHRA).

To succeed on a claim of discrimination based on the alleged failure to accommodate, a plaintiff must establish that she is an otherwise qualified person with a disability and that the defendant failed to reasonably accommodate that disability. *See Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 547 (Minn. 2001). We will assume, without deciding, that Rajpal's scholastic performance anxiety is indeed a disability that would entitle her to a reasonable accommodation in her medical studies. We focus our analysis on whether the university failed to make accommodations that would render her qualified to continue her medical studies.

Rajpal's failure-to-accommodate claim begins on a narrow platform because courts are ill-suited to second-guess the professional judgment of educators in determining whether a program's standards are satisfied. *See Falcone v. Univ. of Minn.*, 388 F.3d 656, 656 (8th Cir. 2004). Our deference exists because the decision to dismiss a student for academic reasons "requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90, 98 S. Ct. 948, 955 (1978); *see also Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S. Ct. 507, 513 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment.").

And the platform of her claim is further narrowed because the only accommodations she requested were the two *test-taking* accommodations recommended by Dr. Beldon and

6

adopted by the school and the single *clinical-oriented* accommodation of retaking the failed OB-GYN clinical course at a location or under circumstances more suited to her particular learning style. On this platform, Rajpal's claim fails because she does not demonstrate that the requested accommodation is reasonable or that she is "otherwise qualified" even with the proposed accommodation. (We do not reach the other apparent problem, which is that Rajpal's request for a more conducive setting for the clinical program bears only on her personal learning style and has no apparent relationship to her stated performance-anxiety disability.)

The academic grievance panel concluded that providing a different clinical site would not be reasonable because "part of being a physician involves being able to work competently in different and changing clinical circumstances." It recognized that the school expects (and insists) that its medical students will work, and adaptively learn, in any clinical condition. The panel took the position that Rajpal was responsible for learning the required material "regardless of the clinical cases she was presented with." Rajpal gives us no persuasive reason to question this logic.

Because Rajpal's failure in the clinic arose from her failure to learn the material rather than from her disability, the university takes the position that she was not otherwise qualified even if she had sought and been given a *reasonable* accommodation for her disability. Rajpal counters by maintaining that the university's ostensible exercise of its professional, academic judgment is only a pretext for its disability discrimination, pointing out that multiple other medical students were not dismissed after they failed other clinical courses. This argument could draw us into second-guessing the school's highly subjective

7

and academically determined measures in its distinguishing between the quality of different students' academic proficiencies and between the nature of the various clinical opportunities. We are wholly unqualified for that task. And we deem fatal to Rajpal's argument her lack of any evidence from which a fact-finder could conclude that the nondismissed students are similarly situated to her. She points to nothing in the record indicating, for example, that the clinical failures of any of the other students arose from their admitted inability to learn in their clinical setting. In sum, the committee expressed serious misgivings about Rajpal's ability to perform as a medical doctor. This opinion rested on its assessment of her performance as a medical student, including her two clinical course failures. We cannot say that the committee's decision to dismiss Rajpal was either such a substantial departure from accepted academic norms that it did not actually exercise professional judgment, *see Ewing*, 474 U.S. at 225, 106 S. Ct. at 513, or that it reflects illegal, disparate treatment.

Rajpal also argues that the University failed to engage in an interactive process to determine whether reasonable accommodations were possible. *See* 29 C.F.R. § 1630.2(o)(3) (2015). This argument overlooks that Rajpal has the burden to proffer a reasonable accommodation that would make her otherwise qualified. *See Stern v. Univ. of Osteopathic Med. & Health Scis.*, 220 F.3d 906, 909 (8th Cir. 2000). Because Rajpal's proposed accommodation of retaking the clinic in a different setting would not render her qualified, the argument fails.

The district court did not err by granting summary judgment on Rajpal's discrimination claim.

## II

We turn to Rajpal's argument that the dismissal violated her procedural and substantive due process rights guaranteed by the Fourteenth Amendment. The argument does not lead us to reverse.

### *Procedural Due Process*

Rajpal argues that the committee violated her due process rights by dismissing her based on false evidence and by not allowing her to be present at its August 19 committee deliberation. The Due Process Clause does not obligate a university to provide a formal hearing to a student dismissed for performance deficiencies. *Horowitz*, 435 U.S. at 90, 98 S. Ct. at 955. The school satisfies the student's due process rights by notifying her of the deficiencies and of the possibility of her dismissal, and by making its decision carefully and deliberately. *Id.* at 85, 98 S. Ct. at 952.

The university afforded Rajpal adequate process. It repeatedly informed Rajpal of her poor performance and that her failure could lead to dismissal. After her first clerkship failure, the school told her in writing that another clinical failure would mandate a dismissal hearing. It reminded her of the school's dismissal policy after it granted her request to extend her graduation date. And although the Constitution does not require it, the school provided her formal hearing opportunities. It provided her a forum to contest her dismissal and another hearing after she asked the school to reconsider its decision. It had no constitutional duty to invite her to attend the August 19 deliberation. The university also provided a forum for her to appeal the committee's decision to an academic grievance panel, to the dean of the medical school, and to the provost. She was represented by counsel

9

throughout these proceedings and had the full opportunity to challenge the substance of the committee's decision.

Rajpal also maintains that the process was constitutionally inadequate because the committee based its findings on false information. Her argument faces insurmountable legal and factual obstacles.

The legal problem with the argument is that Rajpal relies only on a host of criminal cases that stand for the proposition that the state violates due process by knowingly introducing false evidence to secure a criminal conviction. *See, e.g.*, *State v. Hill*, 871 N.W.2d 900, 907 (Minn. 2015). She cites no caselaw applying this precept of criminal law to administrative academic decisions. But we can assume, without further inquiry, that knowingly presenting false evidence offends due process in the academic-dismissal arena as well.

Rajpal's argument fails as a matter of fact because no evidence indicates that the school relied on the false information, let alone that it did so knowingly. Rajpal highlights three facts: (1) the transcript provided to the committee included incorrect grades for two second-year courses; (2) the committee incorrectly based its decision in part on an erroneous gastrointestinal pathophysiology failure; and (3) the committee erroneously relied on her pediatric gastroenterology failure because in fact she passed that course. But she identified no evidence countering the university's evidence indicating affirmatively that it did not base its decision on the erroneous grade notations. Rajpal points us to nothing in the record suggesting that the committee was even aware of the two second-year course failures mistakenly included on her school transcript. And the committee did not mention

10

those failures in its letter explaining its decision. It is true that the committee initially listed the gastrointestinal pathophysiology failure as one of its reasons for dismissing Rajpal. But the evidence establishes without contradiction that the committee later expressly recognized that Rajpal had indeed passed that course, and it corrected its mistaken reference to that course on reconsideration. For the pediatric gastroenterology course, committee chairperson Dr. Colin Campbell's deposition testimony states that the committee did not consider that failure in reaching its conclusion. We understand under the circumstances that a student in Rajpal's shoes might wonder if the committee relied on the mistaken information, but the nonmoving party must identify admissible probative evidence, not merely reasons for speculation, to avoid summary judgment.

### *Substantive Due Process*

Rajpal argues that her dismissal violated her substantive due process rights. She must demonstrate that the university acted arbitrarily in dismissing her or that the dismissal was "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225, 106 S. Ct. at 513. This standard requires her to show that her dismissal was unrelated to her academic performance and instead motivated by bad faith or ill will. *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986).

Rajpal argues without evidentiary citation that her dismissal was arbitrary and does not reflect professional judgment because members of the administration acted in bad faith by "feeding false information" to the committee and that her lack of academic progress was manufactured or intentionally overblown. She similarly argues that a jury could find

11

that she was intentionally excluded from the COSSS's August 19 deliberations to prevent her from correcting the erroneous information submitted to the committee. Rajpal's complete lack of evidence prevents us from considering her accusations any further. And even if the record included evidence of this sort of attempted malicious sabotage, again, the unrebutted evidence teaches that the COSSS did not rely on the erroneous academic information when it dismissed Rajpal.

The district court rightly rejected the substantive due process claim.

**Affirmed.**